THE UNITED STATES OF AMERICA, Appellant, *v.* REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 1030. Submitted November 7, 1938.—Decided December 13, 1938.

A. *Cecil Snyder, United States Attorney,* for appellant; *R. B. Pérez Mercado, Chief Land and Title Section, Legal Division,* PRRA., as *amicus curiae.* The registrar appeared by brief.

Mr. Justice De Jesús delivered the opinion of the court.

By a deed No. 19 of August 10 last, executed before Notary Public Angel Padró, Rafaela Molini Ruiz sold to the United States of America, for the purpose and within the project of rural reconstruction of Puerto Rico, two rural properties, one of them being a segregation from another tract of land. On presentation of that document for the record of the properties in question in the Registry of Property of San Germán, the registrar recorded the deed as to the first property but refused to record it as to the second, that is, the segregated portion, and entered the following note at the foot of the instrument.

"The present instrument is recorded as to the property marked with letter A, at page 121 over, of volume 71 of Yauco, property No. 3198, 1st inscription; but the record is denied as to the property marked with letter B, because of the failure to accompany the plan of the estate, as required by Joint Resolution No. 55 of the Legis-

lature of Puerto Rico approved May 15, 1937, validated by an Act of the Congress of June 13, 1938, and in lieu thereof a cautionary notice has been entered for 120 days at page 164 of volume 94 of Yauco, property No. 3665, annotation A. Both estates as well as some others are subject to a mention of charges amounting to $31,857.67. San Germán, August 26, 1938.''

Feeling aggrieved by that decision, the United States of America through its attorneys took the present administrative appeal from that part of the decision which is adverse to it, on the following grounds:

''(a) Because even though the aforesaid Joint Resolution No. 55 should require the presentation of plans in the registry, the Government of the United States of America is not covered by the terms or provisions of such Resolution.

''(b) Because according to Joint Resolution No. 55 of May 15, 1937, it is not necessary not much less compulsory to attach plans of segregation or consolidation, or of any other kind, to deeds presented for record in the registries of property.

''(c) Because even conceding that under the provisions of the law the registrar was justified in requiring the presentation of the plan, neither that law nor any other law in Puerto Rico makes the validity of the transaction depend upon the plan in question, and therefore the failure to present the plan is no justification for noting any defect, whether curable or incurable, in accordance with section 65 of the Mortgage Law.''

The questions raised by the appellant lead us to a determination of the scope and interpretation to be given to the Joint Resolution in question. To that end, and for a better understanding of the problem, we will transcribe the sections applicable to the controversy, but we will first consider the purpose which the Legislature had in passing the said resolution.

██ ██ The primary object of the legislation under consideration, as appears from its context as a whole and especially from its title and preamble, was to facilitate the preparation of a cadastral plan of the Island of Puerto Rico. There are also expressed in said preamble other advantages

of a secondary character that would be derived from such legislation.

The pertinent sections above alluded to read as follows:

"Section 1.—It is hereby authorized that all such plans of rural or urban properties belonging to private persons, municipal entities, and the Insular Government of Puerto Rico as are made by engineers and surveyors holding licenses to practice their respective professions, be submitted to the Commissioner of the Interior for his approval. Three heliographic copies thereof shall accompany the original so that, after they are approved, one copy thereof may be filed in his Department, so that they can be grouped in a general plan that the Division of Public Lands and Archives of the Department of the Interior shall proceed to prepare in order to make the cadastral plan of the Island.

"Section 2.—No copy of plans which has not been previously approved by the Commissioner of the Interior of Puerto Rico shall be admitted in the registries of property, courts of justice, or government offices of this Island.

"*        *        *        *        *        *        *

"Section 7.—A plan of every segregation or grouping made in regard to any property or properties shall be presented, and the part segregated or the properties grouped shall be shown thereon." (Sess. Laws of 1937, pp. 629, 630.)

By section 1, *supra,* authority is conferred upon the Commissioner of the Interior of Puerto Rico to accept for his approval and for filing plans of rural and urban estates belonging to (1) private persons, (2) municipal entities, and (3) the Insular Government, drawn up by engineers and surveyors *holding licenses to practice their respective professions.*

Under this section not every plan is subject to approval and filing by the Department of the Interior. Said section prescribes as indispensable requisites: (*a*) that such plan shall refer to rural or urban estates, (*b*) that the latter shall belong to any of the entities above mentioned, and (*c*) that the plans be drawn up by engineers or surveyors holding licenses to practice their respective professions.

Obviously the Government of the United States of America is not covered by the phrase "private persons," and, therefore, any plan drawn up of properties belonging to said Government are not subject to approval and filing by the Commissioner of the Interior. *Expressio unius est exclusio alterius.*

The presentation of plans for approval and filing by the Commissioner of the Interior is not made compulsory by section 1; but wishing perhaps to emulate the framers of the Mortgage Law in their endeavor to compel the interested parties to present their titles in the registry of property, the lawmaker, having the same purpose in view regarding the plans, made their presentation indirectly compulsory by providing in section 2 that no copy of plans not previously approved by the Commissioner of the Interior of Puerto Rico shall be accepted in the registries of property, courts of justice, or government offices of this island. It is a common practice in judicial tribunals to submit in evidence and accompany as exhibits plans of rural and urban estates. Although not so often, plans are also presented in administrative centers in connection with administrative business; but such is not the case in registries of property where the presentation of plans is not required either by the Mortgage Law or by any other legislation. Section 7 comes in then to supply the omission by requiring that a plan of every segregation or consolidation of any property or properties shall be presented, which, of course, under section 2, must be approved by the Commissioner of the Interior. For the above purposes, the lawmaker might have gone still farther and required the presentation of plans not only where a segregation or consolidation were sought to be recorded, but also in connection with the record of any other transaction in the registry of property. The failure to go that far does not affect, of course, the effectiveness of the legislative provision. The fact that a plan is unnecessary in order to effect

a record in the registry or that it is not the duty of the registrar to file such plan, does not overcome the validity of section 7 either, since, as we have already stated, the purpose sought by the lawmaker was to secure indirectly the submission of plans to the Commissioner of the Interior for his approval, thus increasing the number of cases where such approval and filing become necessary, with the result that their accumulation in greater numbers will aid in the preparation of the cadastral plan.

For the purpose of the registry, the legislative precept would be complied with by attaching the plan to the instrument sought to be recorded, the same to be then returned by the registrar to the interested party after the record is made, with a statement by him in the memorandum of registration as well as in the record entry thereof to the effect that the plan was presented to and seen by the registrar as required by law.

The fact that no other practical purpose would be served by the legislation under discussion is immaterial. It is not within the province of courts to go into a consideration of the intrinsic merits of a statute. This devolves upon the legislative branch and not upon the judiciary, whose duty is confined to the application and construction of the laws.

It remains for us now to determine whether or not section 7 is applicable to segregations or consolidations sought to be recorded by the United States of America. If we construed section 7 independently of sections 1 and 2 and failed to take into account the legislative purpose already mentioned, the answer should be in the affirmative, since said section 7 by itself fails to establish any exception, and where the law does not distinguish courts must not distinguish either. But it is a cardinal rule of statutory construction that the various sections of a statute must be construed with reference to each other, because what is clear in one may throw light upon what is ambiguous in another, and, besides, it is

provided by section 19 of the Civil Code, 1930 ed., that the most effectual and universal manner of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit thereof, or the cause or motives which induced its enactment.

If said section 1 neither requires nor authorizes the submission of plans of estates belonging to the United States of America to the Commissioner of the Interior for his approval, what purpose would be served, congruent with the reason and spirit of the law, by requiring the presentation in the registry of plans not approved by the Commissioner of the Interior and without, therefore, the necessary authenticity for the preparation of the cadastral plan of the Island of Puerto Rico? These considerations lead us to the conclusion that where it is sought to record segregations or consolidations of estates belonging to the United States of America, no presentation in the registries of property of the plans of said estates is necessary.

For the reasons stated the decision appealed from must be reversed and the instrument returned to the Registry of Property of San Germán with directions to the registrar to record the same without the mention of any defect.

Mr. Chief Justice Del Toro took no part in the decision of this case.